**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| AIDS HEALTHCARE FOUNDATION, | |
| Plaintiff, | |
| v. | Cause No. 4:22-cv-00743-AGF |
| EXPRESS SCRIPTS, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF EXPRESS SCRIPTS' MOTION TO DISMISS**

## Table of Contents

**Page**

Table of Authorities...................................................................................................................... iii

Introduction.................................................................................................................................... 1

Background..................................................................................................................................... 2

Legal Standard ............................................................................................................................... 3

Argument........................................................................................................................................ 3

I.       This court should dismiss the contract claims (Counts I–III) ............................................ 3

         A.       AHF fails to allege a plausible breach-of-contract claim.................................... 3

                  1.       AHF fails to identify a breached contractual provision ........................... 4

                  2.       The parties' contracts authorize the challenged adjustments ................... 5

         B.       AHF fails to allege a breach of the covenant of good faith and fair dealing.......... 6

                  1.       AHF fails to plead plausible allegations of bad faith............................... 6

                  2.       AHF fails to plead plausible allegations of exercised discretion .............. 7

         C.       AHF fails to state a plausible claim of unconscionability .................................... 7

II.      This Court Should Dismiss The Claims Brought Under State And Federal Any Willing
         Provider Laws (Counts IV, X–XV) ................................................................................. 10

III.     This court should dismiss the Consumer-Protection Claims (Counts V–IX)................... 12

         A.       AHF lacks statutory standing to bring its California claim ................................ 12

         B.       AHF has no private right of action to bring its Louisiana claim......................... 13

         C.       AHF has no statutory standing to bring its New York claim.............................. 13

         D.       AHF has no statutory standing to bring its Washington claim ........................... 14

         E.       AHF fails to state a claim under Florida law...................................................... 15

Conclusion ................................................................................................................................... 15

# Table of Authorities

**Page(s)**

## Cases

*Aldridge v. City of St. Louis, Missouri*,
  2019 WL 1695982 (E.D. Mo. Apr. 17, 2019) ....................................................... 6

*Allstate Ins. Co. v. Lighthouse L. P.s., Inc.*,
  2017 WL 347081 (W.D. Wash. Jan. 24, 2017) .................................................... 14

*Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*,
  2016 WL 468647 (E.D. Mo. Feb. 8, 2016) .................................................. 10, 12

*Andrichyn v. TD Bank, N.A.*,
  93 F. Supp. 3d 375 (E.D. Pa. 2015) ...................................................................... 8

*Arthur v. Microsoft Corp.*,
  676 N.W.2d 29 (Neb. Sup. Ct. 2004) .................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 3, 6

*Best v. U.S. Nat. Bank of Oregon*,
  714 P.2d 1049 (Or. Ct. App. 1986) ...................................................................... 8

*Bridgecrest Acceptance Corp. v. Donaldson*,
  2022 WL 2707785 (Mo. July 12, 2022) ................................................................ 7

*Cicle v. Chase Bank USA*,
  583 F.3d 549 (8th Cir. 2009) ............................................................................... 8

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.*,
  808 F.3d 747 (8th Cir. 2015) ............................................................................... 6

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
  252 F. Supp. 3d 274 (S.D.N.Y. 2017) .................................................................. 8

*Cowin Equip. Co., Inc. v. General Motors Corp.*,
  734 F.2d 1581 (11th Cir. 1984) ........................................................................... 8

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
  2020 WL 4368212 (N.D. Cal. July 30, 2020) ..................................................... 11

*Doe v. SexSearch.com*,
  551 F.3d 412 (6th Cir. 2008) ............................................................................... 8

*Eaton v. CMH Homes, Inc.*,
  461 S.W.3d 426 (Mo. 2015) ................................................................................ 8

*Frye v. Am. Gen. Fin., Inc.*,
  307 F. Supp. 2d 836 (S.D. Miss. 2004) ............................................................... 8

*GE Cap. Info. Tech. Sols., Inc. v. Campbell Ads LLC*,
  2013 WL 587887 (N.D. Ind. Feb. 11, 2013) ....................................................... 8

*Gillis v. Principia Corp.*,
   832 F.3d 865 (8th Cir. 2016) ........................................................... 4

*Greer v. Home Realty Co. of Memphis, Inc.*,
   2010 WL 11493119 (W.D. Tenn. May 18, 2010) ............................... 8

*Heartland Med., LLC v. Express Scripts, Inc.*,
   2018 WL 6831164 (E.D. Mo. Dec. 27, 2018) .................................. 10

*HM Compounding Servs. v. Express Scripts, Inc.*,
   2015 WL 4162762 (E.D. Mo. July 9, 2015) .................................... 10

*In re Express Scripts, Inc., PBM Litigation*,
   2008 WL 2952787 (E.D. Mo. July 30, 2008) .................................. 11

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
   2006 WL 2632328 (E.D. Mo. Sept. 13, 2006) ................................. 14

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
   2007 WL 1796224 (E.D. Mo. June 20, 2007) ................................. 14

*IV Sols., Inc. v. Connecticut Gen. Life Ins. Co.*,
   2015 WL 12843822 (C.D. Cal. Jan. 29, 2015) ................................ 13

*Johnson v. Long Beach Mortg. Loan Trust 2001–4*,
   451 F. Supp. 2d 16 (D.D.C. 2006) ................................................... 8

*Jones v. Americas Ins. Co.*,
   226 So. 3d 537 (La. App. 1 Cir. 2017) ........................................... 13

*Knowles v. TD Ameritrade Holding Corp.*,
   2 F.4th 751 (8th Cir. 2021) ............................................................. 4

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115, 135 (2007) ........................................... 12, 13

*Lossia v. Flagstar Bancorp, Inc.*,
   2016 WL 520867 (E.D. Mich. Feb. 10, 2016) ................................... 8

*Lucero v. Curators of Univ. of Missouri*,
   400 S.W.3d 1 (Mo. Ct. App. 2013) .................................................. 4

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ...................................................... 15

*Nygaard v. Sioux Valley Hosps. & Health Sys.*,
   731 N.W.2d 184 (S.D. Sup. Ct. 2007) .............................................. 8

*Open Text, Inc. v. Northwell Health, Inc.*,
   2021 WL 1235254 (C.D. Cal. Feb. 19, 2021) ................................. 12

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ............................................... 2, 10, 12

*Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*,
   59 S.W.3d 505 (Mo. 2001) .............................................................. 9

*Reitz v. Nationstar Mortg., LLC,*
  954 F. Supp. 2d 870 (E.D. Mo. 2013)..................................................................... 6, 7

*Richardson v. Richardson,*
  218 S.W.3d 426 (Mo. 2007)....................................................................................... 8

*Riley v. TIG Ins. Co.,*
  117 F.3d 1416 (5th Cir. 1997) .................................................................................. 12

*Riley v. Transamerica Ins. Grp. Premier Ins. Co.,*
  923 F. Supp. 882 (E.D. La. 1996) ............................................................................ 12

*Robinett v. Opus Bank,*
  2013 WL 5850873 (W.D. Wash. Oct. 30, 2013)................................................. 14, 15

*Rubio v. Capital One Bank,*
  613 F.3d 1195 (9th Cir. 2010) ................................................................................... 8

*Sports Cap. Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone,*
  2014 WL 1400159 (E.D. Mo. Apr. 10, 2014) ............................................................ 9

*State ex rel. Hewitt v. Kerr,*
  461 S.W.3d 798 (Mo. 2015)....................................................................................... 9

*Tex. Pharm. Ass'n v. Prudential Ins. Co. of Am.,*
  907 F. Supp. 1019 (W.D. Tex. 1995) ....................................................................... 12

*Trilogy Health Care, LLC v. Medco Health Solutions, Inc.,*
  2013 WL 4832708 (D.N.J. Sept. 10, 2013) .............................................................. 11

*United/Xcel-Rx, LLC v. Express Scripts, Inc.,*
  2019 WL 5536806 (E.D. Mo. Oct. 25, 2019) ........................................................... 10

*Volz v. Provider Plus, Inc.,*
  2015 WL 3621113 (E.D. Mo. June 9, 2015)............................................................... 4

*Webb v. Republic Bank & Tr. Co.,*
  2013 WL 5447709 (W.D. Ky. Sept. 30, 2013) ........................................................... 8

*Wells Fargo Bank, NA v. Smith,*
  2012 WL 10987189 (S.C. Ct. App. June 13, 2012)..................................................... 8

*Zean v. Fairview Health Servs.,*
  858 F.3d 520 (8th Cir. 2017) ................................................................................. 2, 5

## Statutory Authorities

215 ILCS 134/10 ......................................................................................................... 11

215 ILCS 134/72(A)..................................................................................................... 11

Cal. Bus. & Prof. Code § 17200 ................................................................................... 12

Fla. Stat. Ann. § 501.212 .............................................................................................. 15

Miss. Code Ann. § 83-9-6 ............................................................................................ 11

La. Rev. Stat. § 22:1214................................................................................................ 12

La. Rev. Stat. § 22:1961 .................................................................................................. 13

La. Rev. Stat. § 22:1964 .................................................................................................. 13

La. Rev. Stat. § 22:1964(15) ........................................................................................... 11

N.Y. Gen. Bus. Law § 349(a) .......................................................................................... 13

O.C.G.A. § 33-20-16 ....................................................................................................... 11

O.C.G.A. § 33-20-3 ......................................................................................................... 11

S.C. Code § 38-71-147 .................................................................................................... 11

S.C. Code § 38-71-2250 .................................................................................................. 12

Tex. Insurance Code Art. 21.52B .................................................................................... 11

Wash. Rev. Code Ann. § 19.86.020 ................................................................................ 14

**Rules and Regulations**

42 C.F.R. § 423.505(b)(18) ............................................................................................. 10

79 Fed. Reg. 29844 (May 23, 2014) ................................................................................ 15

**Introduction**

In 2019, Express Scripts, Inc. ("**Express Scripts**"), and AIDS Healthcare Foundation ("**AHF**") signed the first of a series of contracts in which AHF explicitly agreed that Express Scripts could adjust, based on AHF's performance, how much it reimbursed AHF for Medicare Part D prescription drugs. The contracts provide that AHF's performance would be measured with quality metrics modeled after industry standard calculations, such as the Star Ratings used by the Center for Medicare and Medicaid Services ("**CMS**"), the agency that administers Medicare Part D. Having performed poorly on those Star Ratings, which led to its reimbursements being reduced, AHF now improperly seeks to have this Court undo the deal it struck.

AHF claims that the performance adjustments breach its contracts with Express Scripts, are unconscionable, and violate federal and state Any Willing Provider ("**AWP**") laws as well as consumer-protection laws. Yet federal regulations expressly allow these performance adjustments, and AHF explicitly agreed to these adjustments in its contracts with Express Scripts. As AHF admits, such adjustments are an "industry wide phenomenon not unique to [Express Scripts]." Dkt. No. 1 ("**Compl.**") ¶ 21. These performance adjustments are widespread because they encourage pharmacies like AHF to perform better, which leads to better patient outcomes and lower drug costs. Simply put, there is nothing unlawful, unconscionable, or unfair about these adjustments.

Each of AHF's claims for relief is unavailing and should be dismissed. *First*, AHF fails to state a plausible claim for breach of contract or breach of the covenant of good faith and fair dealing because the parties' contracts expressly permit the performance-based adjustments that AHF challenges. AHF knowingly agreed to this arrangement and is sufficiently sophisticated to be held to the benefit of its bargain. AHF also fails to state a claim of unconscionability, as unconscionability is a *defense* to contract formation, not an affirmative cause of action. And, in any event, AHF fails to allege facts that would plausibly support a claim of unconscionability.

***Second***, the AWP claims should be dismissed because—as the Eighth Circuit and other courts have repeatedly held—AWP statutes and regulations either do not apply to pharmacy benefit managers like Express Scripts, do not provide a private cause of action, or both.

***Third***, the consumer-protection claims should be dismissed because businesses like AHF lack statutory standing to bring consumer protection claims based on private contract disputes.

## Background

Express Scripts is a pharmacy benefit manager ("**PBM**"). "A PBM is a third-party administrator of prescription drug programs." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 511 (8th Cir. 2018). PBMs, among other things, "process and pay prescription drug claims made by pharmacies and patients" and "create networks of pharmacies in which PBM members can receive their prescription pharmaceuticals at covered, discounted rates." *Id.*

AHF is a provider of HIV/AIDS medical care in the United States. Compl. ¶ 2. AHF and Express Scripts first entered into a provider agreement in 2017. Ex. 1 ("**2017 Agreement**").[1] The 2017 Agreement sets out the terms and conditions of the services that Express Scripts agreed to provide in exchange for a per-transaction fee. *Id.* The 2017 Agreement provided for annualized average reimbursement rates, but no performance-based adjustments. *Id.*

In 2019, AHF and Express Scripts amended their contract to allow AHF to access Express Scripts' new Medicare Part D Performance Network. Ex. 5 ("**2019 Amendment**"). To join this performance network, AHF agreed to performance-based reimbursement rates. *Id.* at 2 ("Provider agrees that it shall be assessed . . . per Claim reimbursement adjustments ('Performance

---

[1] "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss," and the contract may be provided as an exhibit to the motion to dismiss. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (citation omitted). Here, the Complaint embraces AHF's governing agreements with Express Scripts, *see, e.g.*, Compl. ¶¶ 18, 20–21, 43–44, so Express Scripts has provided them as exhibits to its motion.

Adjustments') based on Provider's Pharmacies performance . . . ."). Attachment 1 to the 2019 Amendment is a protocol that details the performance measurement and adjustments, including that Express Scripts would measure AHF's performance "by using quality metrics modeled after industry standard calculations; e.g., CMS star ratings." *Id*. at 5–7. AHF signed this amendment on December 6, 2019. *Id*. at 4.

Since then, AHF and Express Scripts have executed additional amendments, and Express Scripts has provided updated performance protocols. For example, in October 2020, AHF signed a new amendment that updated its reimbursement rates and the then-governing performance protocol. Ex. 8. In total, in addition to the 2017 Agreement, AHF and Express Scripts have operated under two master agreement modifications and four reimbursement modifications, as well as numerous performance protocols. Exs. 1–14.

AHF alleges that, from 2020 through 2022, performance adjustments reduced AHF's reimbursement by approximately $4.8 million. Compl. ¶ 50.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Under the 2017 Agreement, Missouri law governs this dispute. Ex. 1 § 7.8.

## Argument

## I.   THIS COURT SHOULD DISMISS THE CONTRACT CLAIMS (COUNTS I–III)

### A.   AHF fails to allege a plausible breach-of-contract claim

In Missouri, to state a claim for breach of contract, a plaintiff must plead (1) the existence and terms of a particular contract; (2) that the plaintiff performed or tendered performance pursuant

3

to the contract; (3) a breach of the contract by the defendant; and (4) damages suffered as a result of the breach. *Volz v. Provider Plus, Inc.*, 2015 WL 3621113, at *2 (E.D. Mo. June 9, 2015) (citation omitted). Here, AHF fails to plead the specific contract terms at issue, and its assertions that performance-based adjustments (which it refers to as the "Claw Back Program" or "Program") breached the parties' contracts are contradicted by the terms of those contracts.

### 1.    AHF fails to identify a breached contractual provision

Under Missouri law, "the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient." *Gillis v. Principia Corp.*, 832 F.3d 865, 872 n.11 (8th Cir. 2016); *accord Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013) ("Missouri law, therefore, requires Appellant to identify which rights or obligations Respondent breached under the contract in order to establish a claim for breach of contract."). The Eighth Circuit recently applied an identical requirement under Nebraska law to affirm the dismissal of a breach-of-contract action because the plaintiff had failed to identify a contractual provision that prohibited the alleged misconduct at issue. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757–58 (8th Cir. 2021). As such, the allegations failed to provide the defendant with reasonable notice of the breach and were insufficient to survive a motion to dismiss. *Id.*; *see also Gillis*, 832 F.3d at 872 n.11; *Lucero*, 400 S.W.3d at 5.

Similarly here, AHF does not identify the particular contract, amendment, or terms at issue. Indeed, AHF neither attaches the agreements to the Complaint nor cites to any relevant reimbursement provisions, of which there are many. *See* Ex. 2 §§ 2–3, Supplement A, Attachment 1; Ex. 3 §§ 2–3, Attachments 1–3; Ex. 5 §§ 2–3, Attachment 1; Ex. 6 §§ 2–3; Ex. 7 § 2; Ex. 8 §§ 2–3, Supplement A, Attachments 2–3; Ex. 10 §§ 2–3; Ex. 11 §§ 3–4; Ex. 12 §§ 3–5; Ex. 13 §§ 3–5; Ex. 14. Instead, just as the plaintiff did in *Knowles*, AHF alleges that the performance program is "crassly designed" and contains "numerous severe and intractable problems." Compl. ¶¶ 47–49.

Tellingly, AHF never states that these purported "problems" violate the performance protocols in its agreements with Express Scripts. *Id*. ¶ 47.

Nor does AHF cure this problem through its allegation that Express Scripts missed its minimum rate guarantee. *Id*. ¶ 52. Though these dollar amounts may appear specific, there is no way, reading the Complaint, for Express Scripts to determine which of the myriad factors that affect the guarantee AHF contends it has allegedly misapplied. For example, the 2019 Amendment of the 2017 Agreement allows for Express Scripts to net any surplus reimbursement from one contract year against a shortfall in another. Ex. 3 § 2.2. If AHF failed to account for the offset methodology in its calculations, Express Scripts is entitled to know so that it can prepare a legal—not factual—argument as to why it has not breached the agreement. Put another way, on these facts, merely alleging that Express Scripts went below a rate guarantee is not sufficient to state a claim of breach: the contract outlines the calculation rather than fixing the amount due, so to properly state a claim, AHF must clarify how it contends Express Scripts has miscalculated.

### 2.    The parties' contracts authorize the challenged adjustments

AHF likely does not identify any particular contract provision because the parties' contracts expressly authorize the performance adjustments AHF now challenges. When an alleged contract breach is contradicted by the express terms of the contract, a court may properly resolve the issue as a matter of law at the motion-to-dismiss stage. *See Zean v. Fairview Health Servs*., 858 F.3d 520, 526–27 (8th Cir. 2017). For example, AHF characterizes the performance adjustments as a unilateral modification of the existing agreement and breach of contract. Compl. ¶¶ 44, 64. These allegations are plainly contradicted by the 2019 Amendment, in which AHF opted into the performance adjustments to join Express Scripts' Medicare Part D Performance Network. Ex. 5 § 2.2 ("Provider agrees that it shall be assessed certain quarterly post point-of-sale, per Claim reimbursement adjustments ('Performance Adjustments') based on Provider's Pharmacies

performance, as measured by [Express Scripts].”). AHF signed a second agreement with similar performance provisions one year later. Ex. 8, Performance Program Attachment (“Provider shall be assessed certain per claim reimbursement adjustments (‘Performance Adjustments’) based on Provider’s Pharmacies performance against certain Quality Metrics (as defined below), as measured by [Express Scripts].”). As such, the “implementation” of these performance adjustments could not be a breach of contract.

### B.      AHF fails to allege a breach of the covenant of good faith and fair dealing

To establish a violation of the covenant of good faith and fair dealing, a plaintiff must show that the defendant both made a decision in bad faith and exercised some discretion when making the decision. *Reitz v. Nationstar Mortg.*, LLC, 954 F. Supp. 2d 870, 891–92 (E.D. Mo. 2013). As such, “there can be no breach of the implied covenant where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.” *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 808 F.3d 747, 751 (8th Cir. 2015) (citation omitted). Where discretion is exercised, there is no breach of the covenant if the decision is simply a business judgment. *Reitz*, 954 F. Supp. 2d at 892. AHF’s breach-of-covenant claim fails because there is no plausible allegation of bad faith or exercised discretion.

### 1.      AHF fails to plead plausible allegations of bad faith

Although AHF asserts that Express Scripts acted in bad faith through the “unilateral imposition and operation” of the performance adjustments, Compl. ¶ 64, this bare recital is a conclusion not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *see also Aldridge v. City of St. Louis, Missouri*, 2019 WL 1695982, at *14 (E.D. Mo. Apr. 17, 2019) (refusing to credit conclusory allegation that defendant acted with “bad faith”). Moreover, the contracts flatly contradict this assertion: AHF chose to sign the 2019 Amendment implementing the performance adjustments so that AHF could participate in the Medicare Part D Performance Network. Ex. 5

§ 2.2. The performance adjustments were thus the result of the parties' *mutual agreement*, not a unilateral bad-faith decision. AHF's only other factual allegation is that Express Scripts used the performance adjustments for its "own pecuniary benefit and to the pecuniary benefit of its plan sponsor clients . . . to better [Express Scripts'] competitive position as a PBM." Compl. ¶ 65. Express Scripts disputes this characterization, but even assuming it true for purposes of this Motion, it is insufficient to plausibly allege bad faith. Rather, it merely describes the basic strategy of every for-profit business in a competitive service industry: manage costs effectively in order to compete for clients. As recognized in *Reitz*, pleadings must allege something more than a business decision to plausibly state a claim of bad faith. 954 F. Supp. 2d at 892.

### 2.     AHF fails to plead plausible allegations of exercised discretion

The Complaint never alleges that Express Scripts exercised any discretion to AHF's detriment. At most, AHF seems to suggest that Express Scripts exercised discretion through its "imposition and operation" of the performance adjustments. Compl. ¶ 64. However, by the terms of the signed agreements with AHF, Express Scripts is bound to administer the adjustments pursuant to the contractual performance protocols. *See, e.g.*, Ex. 5 § 2.2 ("*shall* be assessed") (emphasis added). Express Scripts would have breached its agreement with AHF if Express Scripts had failed to implement and operate the contractual performance adjustments. Exs. 5–8, 10–14. Nor did Express Scripts exercise discretion in evaluating AHF's performance, since the performance metrics it employed (*e.g.*, CMS star ratings) tracked those imposed on AHF by federal regulators. Compl. ¶ 15. AHF has thus failed to plausibly allege that Express Scripts exercised discretion sufficient to state a claim for breach of the covenant of good faith and fair dealing.

### C.     AHF fails to state a plausible claim of unconscionability

Although AHF raises it as an affirmative claim, unconscionability is a *defense* to contract formation. *Bridgecrest Acceptance Corp. v. Donaldson*, 2022 WL 2707785, at *5 (Mo. July 12,

2022) (citation omitted). While no Missouri court has expressly considered whether unconscionability can be an affirmative claim, most courts to decide the issue have held that unconscionability is not a proper basis for recovering damages.[2] This Court should as well.

Even if unconscionability were a valid claim, AHF fails to state a plausible claim of unconscionability. Unconscionability is evaluated based on the circumstances at the time the contract was entered, not the resulting economics for one or both parties. *Richardson v. Richardson*, 218 S.W.3d 426, 430 (Mo. 2007) (en banc). Missouri law defines unconscionability as "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 432 (Mo. 2015) (en banc) (citation omitted). Pleading that the agreement at issue is a contract of adhesion is insufficient to show the manifest inequity required for unconscionability. *See, e.g.*, *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) ("These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt."). Similarly, while pleading compelling factual circumstances

---

[2] *See, e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205–06 (9th Cir. 2010); *Doe v. SexSearch.com*, 551 F.3d 412, 419–20 (6th Cir. 2008); *Cowin Equip. Co., Inc. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017); *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 388 (E.D. Pa. 2015); *Johnson v. Long Beach Mortg. Loan Trust 2001–4*, 451 F. Supp. 2d 16, 36 (D.D.C. 2006); *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 844 (S.D. Miss. 2004); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. Sup. Ct. 2007); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 39 (Neb. Sup. Ct. 2004); *Best v. U.S. Nat. Bank of Oregon*, 714 P.2d 1049, 1056 (Or. Ct. App. 1986); *Lossia v. Flagstar Bancorp, Inc.*, 2016 WL 520867, at *2 (E.D. Mich. Feb. 10, 2016); *GE Cap. Info. Tech. Sols., Inc. v. Campbell Ads LLC*, 2013 WL 587887, at *3 (N.D. Ind. Feb. 11, 2013); *Webb v. Republic Bank & Tr. Co.*, 2013 WL 5447709, at *5 (W.D. Ky. Sept. 30, 2013); *Wells Fargo Bank, NA v. Smith*, 2012 WL 10987189, at *4 (S.C. Ct. App. June 13, 2012); *Greer v. Home Realty Co. of Memphis, Inc.*, 2010 WL 11493119, at *5 (W.D. Tenn. May 18, 2010).

of unequal bargaining power may be sufficient to survive a motion to dismiss, conclusory allegations of unequal bargaining power are not. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809–10 (Mo. 2015) (en banc). Instead, the pleading must include factual allegations demonstrating an extraordinary imbalance of power, such as an unusual lack of sophistication, inability to read the terms, coercion, failed negotiations, or high pressure negotiating tactics, as "it is well-settled in Missouri that 'sophisticated parties have freedom of contract—*even to make a bad bargain,* or to relinquish fundamental rights.'" *Sports Cap. Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone*, 2014 WL 1400159, at *2 (E.D. Mo. Apr. 10, 2014) (quoting *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc*., 59 S.W.3d 505, 508 (Mo. 2001) (en banc)) (emphasis added).

Here, AHF fails to plead any factual allegations that demonstrate unequal bargaining power. Rather, AHF asserts at the outset of the Complaint that it is a highly sophisticated party:

> AHF is the world's largest provider of healthcare services to people living with HIV/AIDS and is the largest private-sector provider of HIV/AIDS medical care to people in the United States. . . . AHF provides medical care . . . and advocacy to more than 1.6 million patients in 45 countries, including the United States. AHF . . . owns and operates 62 retail, accredited, specialty pharmacies in 14 states . . . and 2 territories . . . that serve people living with HIV/AIDS . . . . In the United States, AHF operates 72 health care centers in 15 states, the District of Columbia and Puerto Rico and 37 Wellness Centers in 14 states and the District of Columbia.

Compl. ¶ 2 (footnote omitted). Additionally, throughout the Complaint AHF purports to have a depth of knowledge about the regulatory history underpinning the performance adjustments and how they are used throughout the industry. *See, e.g.*, *id*. ¶¶ 20, 23–25, 27–29.

Moreover, AHF fails to plead any conduct that demonstrates an *exercise* of unequal bargaining power. For example, while AHF asserts that "[Express Scripts] and its health plan partners set the terms," *id*. ¶ 19, AHF does not allege that AHF attempted to negotiate those terms, that Express Scripts refused to negotiate, or that Express Scripts conditioned future network access on participation in the Program. This deficiency in pleading is especially relevant because AHF

and Express Scripts had an active agreement at the time that AHF agreed to the modifications for the Program. *See* Ex. 1 § 4.1. Moreover, AHF concedes that the performance metrics employed by Express Scripts track the star ratings employed by federal regulators, and are not metrics that have been created or uniquely applied by Express Scripts. Compl. ¶ 15. Without any factual allegations that show an exercise of unequal bargaining power, AHF fails to state a claim of unconscionability.

## II.   THIS COURT SHOULD DISMISS THE CLAIMS BROUGHT UNDER STATE AND FEDERAL ANY WILLING PROVIDER LAWS (COUNTS IV, X–XV)

This Court should also dismiss AHF's claims under federal and state AWP laws.

*Federal AWP Law (Count IV).* This Court has twice dismissed claims against Express Scripts under 42 C.F.R. § 423.505(b)(18), the federal AWP regulation, because the federal AWP regulation does not supply a private cause of action. *United/Xcel-Rx, LLC v. Express Scripts, Inc.*, 2019 WL 5536806, at *5 (E.D. Mo. Oct. 25, 2019) ("[n]one of these provisions [including 42 C.F.R. § 423.505(b)(18)] provide an express or implied cause of action"); *Heartland Med., LLC v. Express Scripts, Inc.*, 2018 WL 6831164, at *2 (E.D. Mo. Dec. 27, 2018) (same). For the same reasons, it should dismiss AHF's claim under 42 C.F.R. § 423.505(b)(18). Were that not enough, this regulation governs only "[t]he contract between the Part D plan sponsor and CMS," 42 C.F.R. § 423.505(b)(18). The Complaint does not allege that either AHF or Express Scripts is party to such a contract, which is yet another reason to dismiss this claim.

*State AWP Laws (Counts X–XV).* The Eighth Circuit and other courts have also repeatedly dismissed state-law AWP claims against Express Scripts and other PBMs because AWP laws do not apply to PBMs or provide a private right of action. *See, e.g.*, *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018) (PBM not covered by AWP laws in Georgia, Mississippi, or North Carolina); *Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, 2016 WL 468647, at *6 n.3 (E.D. Mo. Feb. 8, 2016) (Texas); *HM Compounding Servs. v. Express Scripts,*

*Inc.*, 2015 WL 4162762, *13 (E.D. Mo. July 9, 2015) (New Jersey); *see also Trilogy Health Care, LLC v. Medco Health Solutions, Inc.*, 2013 WL 4832708, at *2 (D.N.J. Sept. 10, 2013) (rejecting argument that pharmacy benefits manager violated "'Any Willing Provider' laws in various states" because plaintiff did not offer "even a colorable argument that, given the choice of law provision in the contract, a particular 'Any Willing Provider' statute applies *or gives rise to a private right of action against a pharmacy benefits manager*, which Medco is, rather than an insurer").

None of the AWP state laws invoked in the Complaint apply to Express Scripts. Such laws regulate only entities that provide health insurance or pharmacy benefits to consumers. *See* O.C.G.A. §§ 33-20-16, 33-20-3(2) & (3) (Georgia AWP statute regulates "health care corporation[s]" that "administer one or more health care plans"); 215 ILCS 134/10 & 134/72(A) (Illinois AWP statute regulates "health care plan[s],"); La. Rev. Stat. § 22:1964(15) (Louisiana AWP statute regulates conduct concerning "a health benefits policy or plan"); Miss. Code Ann. § 83-9-6 (Mississippi AWP statute regulates "health benefit plans" and certain "insurance companies and health maintenance organizations"); S.C. Code § 38-71-147 (South Carolina AWP statute applies only to "[a]n individual or group accident and health or health insurance policy or a health maintenance organization plan"); Tex. Insurance Code Art. 21.52B (Texas AWP statute applies only to "health insurance polic[ies]" and "managed care plan[s]").

Express Scripts is not regulated under these statutes. As a PBM, Express Scripts *manages* pharmacy benefits for third-party health plans and others, but does not itself *offer or provide* any pharmacy benefits or other health insurance to customers. *See In re Express Scripts, Inc., PBM Litigation*, 2008 WL 2952787, at *3 (E.D. Mo. July 30, 2008). As one court observed, "recent legislative developments underscore that PBMs are not within the scope of AWP statutes unless specifically included," which none of the state laws at issue here do. *CZ Servs., Inc. v. Express*

11

*Scripts Holding Co.*, 2020 WL 4368212, at \*6 (N.D. Cal. July 30, 2020). Indeed, Express Scripts is not aware of any court that has applied these AWP laws to a PBM before. To the contrary, courts have previously held that three of the AWP statutes invoked by AHF do not apply to Express Scripts. *See Park Irmat*, 911 F.3d at 519 (Georgia and Mississippi); *Alt. Med. & Pharmacy, Inc.*, 2016 WL 468647, at \*6 n.3 (Texas).

Additionally, most of the AWP statutes AHF invokes do not supply a private right of action, but instead provide for government enforcement. *See Riley v. Transamerica Ins. Grp. Premier Ins. Co.*, 923 F. Supp. 882, 888 (E.D. La. 1996) (dismissing claim under Louisiana's AWP law (previously numbered as La. Rev. Stat. § 22:1214) because "that statute does not provide for a private cause of action") (citation omitted), *aff'd sub nom. Riley v. TIG Ins. Co.*, 117 F.3d 1416 (5th Cir. 1997); S.C. Code § 38-71-2250 (providing that the "director [of the department of insurance] shall enforce this article" that regulates PBMs); *Tex. Pharm. Ass'n v. Prudential Ins. Co. of Am.*, 907 F. Supp. 1019, 1023 n.6 (W.D. Tex. 1995) (questioning existence of a private right of action under Texas AWP Law). All the AWP claims should thus be dismissed.

## III.   THIS COURT SHOULD DISMISS THE CONSUMER-PROTECTION CLAIMS (COUNTS V–IX)

This Court should also dismiss AHF's five claims under state consumer-protection statutes.

### A.   AHF lacks statutory standing to bring its California claim

The California Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200, was enacted "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 133, 135 (2007). California courts have repeatedly recognized that non-competitor corporate plaintiffs lack standing to bring a UCL claim based on contracts that do not involve the public or individual customers. *See Open Text, Inc. v. Northwell Health, Inc.*, 2021 WL 1235254, at \*2 (C.D.

Cal. Feb. 19, 2021) (collecting cases). AHF's general allegation that its business agreement with Express Scripts has downstream effects on its own customers is insufficient to transform the private contract dispute into one "involving either the public in general or individual consumers" for the purposes of the UCL. *IV Sols., Inc. v. Connecticut Gen. Life Ins. Co*., 2015 WL 12843822, at *17 (C.D. Cal. Jan. 29, 2015). That stream-of-commerce theory is precisely the argument that the district court rejected in *IV Solutions*. *Id.* at *18 ("[Plaintiff] attempts to invoke [the member beneficiary's] secondary interest [of coverage] in this business-to-business dispute in order to avoid *Linear Tech*. But [the member beneficiary] is not a party to the contract, so [the member beneficiary's] possible secondary interest has no impact under *Linear Tech*."). By the same reasoning, AHF does not have statutory standing under the UCL.

### B.      AHF has no private right of action to bring its Louisiana claim

AHF lacks a private right of action under La. Rev. Stat. § 22:1964. As one Louisiana court explained, La. Rev. Stat. § 22:1961, *et seq.*, "entitled Unfair Trade Practices, provides a detailed enforcement mechanism by which the Commissioner of Insurance is empowered to investigate allegations of unfair methods of competition or unfair or deceptive acts in the insurance business, to hold hearings, to issue cease and desist orders, to assess monetary penalties against violators, and to suspend or revoke the license of violators." *Jones v. Americas Ins. Co.*, 226 So. 3d 537, 543–44 (La. App. 1 Cir. 2017). But "[n]o provision in this statutory scheme, however, creates a cause of action in favor of a person allegedly injured by unfair trade practices in the insurance business as set forth in LSA–R.S. 22:1964." *Id.* Accordingly, AHF's claim should be dismissed.

### C.      AHF has no statutory standing to bring its New York claim

The New York Consumer Protection Act ("**NYCPA**") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. N.Y. Gen. Bus. Law § 349(a). However, the "NYCPA is not applicable unless the

defendant engages in 'consumer oriented' conduct." *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2007 WL 1796224, at *9 (E.D. Mo. June 20, 2007). Thus, private contract disputes are not actionable under the NYCPA. *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2006 WL 2632328, at *8 (E.D. Mo. Sept. 13, 2006). Indeed, this Court has previously ruled that Express Scripts' services do not qualify as consumer oriented under the NYCPA. *Id.* at *9; *In re Express Scripts*, 2007 WL 1796224, at *10. That is because Express Scripts' contractual counterparties, like AHF, are sophisticated business entities acting in an intermediary role between Express Scripts and consumers, so the "potential that parties in an inferior bargaining position would be deceived was reduced." *In re Express Scripts*, 2007 WL 1796224, at *9. Moreover, "transactions involving complex arrangements, knowledgeable and experienced parties and large sums of money . . . are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices." *Id.* at *10 (quotation omitted). Accordingly, the NYCPA claim should be dismissed.

### D.    AHF has no statutory standing to bring its Washington claim

In order to bring a private claim under the Washington Consumer Protection Act ("**CPA**"), Wash. Rev. Code Ann. § 19.86.020, a plaintiff must successfully plead, among other things, that a public interest is implicated. *Allstate Ins. Co. v. Lighthouse L. P.s., Inc.*, 2017 WL 347081, at *2 (W.D. Wash. Jan. 24, 2017). Courts have identified several factors that may implicate a public interest: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the product or service is advertised to the public in general; (3) whether the defendant solicited the plaintiff in a manner likely to apply to other members of the public; and (4) whether the plaintiff and defendant occupied unequal bargaining positions. *Robinett v. Opus Bank*, 2013 WL 5850873, at *2 (W.D. Wash. Oct. 30, 2013) (citation omitted). Unequal bargaining power in this context means a lack of expertise and sophistication in the relevant market. *Id.* at *3.

Here, AHF does not allege that Express Scripts advertised its services to the public or solicited business in a manner likely to extend to other members of the public. And AHF's pleadings show that it is a highly sophisticated global operation with expertise in the relevant market, Compl. ¶ 2, which defeats its conclusory allegation of unequal bargaining power, *Robinett*, 2013 WL 5850873, at \*3. Because three of the four factors indicate that the public interest is not implicated, AHF does not have statutory standing to bring its CPA claim.

### E.    AHF fails to state a claim under Florida law

AHF also fails to state a plausible claim under the Florida Deceptive and Unfair Trade Practices Act ("**FDUTP**"). FDUTP has a safe harbor provision providing that FDUTP does not apply to conduct permitted by federal law. Fla. Stat. Ann. § 501.212. In 2014, CMS amended the governing Medicaid regulation to permit the performance adjustments challenged here. 79 Fed. Reg. 29844, 29878 (May 23, 2014). Indeed, AHF acknowledges in the Complaint that CMS authorized the practice, Compl. ¶¶ 25–31, and that CMS adopted a new rule earlier this year that will continue to allow these performance adjustments until "January 1, 2024," *id.* ¶¶ 35–41. Because the performance adjustments are expressly permitted by CMS until 2024, the FDUTP claim should be dismissed. *See Marrache v. Bacardi U.S.A., Inc*., 17 F.4th 1084, 1099 (11th Cir. 2021) (applying FDUTP safe harbor to dismiss claim challenging conduct allowed by federal law).

### Conclusion

For these reasons, Express Scripts respectfully submits that the Complaint should be dismissed with prejudice.

Dated: September 12, 2022

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Sarah C. Hellmann*
Christopher A. Smith, #53266(MO)
Sarah C. Hellmann, #50373(MO)
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 (fax)
chris.smith@huschblackwell.com
sarah.hellmann@huschblackwell.com

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Michael Lyle (*pro hac vice*)
Jonathan Cooper (*pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
(202) 538-8100 (fax)
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Ellison Ward Merkel (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, N.Y. 10010
(212) 849-7000
(212) 849-7100 (fax)
ellisonmerkel@quinnemanuel.com

*Attorneys for Express Scripts, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of September 2022, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

*/s/ Sarah C. Hellmann*